**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

DELAINE M.,[1]

      **Plaintiff,**

                                     **Case No. 3:24-cv-1108**
    v.                            **Magistrate Judge Norah McCann King**

FRANK BISIGNANO,[2]
Commissioner of Social Security,

      **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Delaine M. for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security that Plaintiff's application. After careful consideration of the entire record, including the administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On November 12, 2020, Plaintiff filed her current application for benefits, alleging that she has been disabled since November 1, 2019. R. 385, 396, 546–51. The application was denied

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

initially and upon reconsideration. R. 386–95, 397–406. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 427. ALJ Peter Lee held a hearing on January 12, 2023, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 37–54. In a decision dated April 3, 2023, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from November 12, 2020, the date on which the application was filed, through the date of that decision. R. 10–24. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on January 31, 2024. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On February 26, 2024, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 2.[3] On April 1, 2024, the case was reassigned to the undersigned. ECF No. 7. The matter is ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

> factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));

*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists

only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is

overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or

"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of

Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see

K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into

account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.

at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular

format in conducting [the] analysis," the decision must contain "sufficient development of the

record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d

501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.

2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an

expression of the evidence s/he considered which supports the result, but also some indication of

the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication

of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short

paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016.

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

6

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 47 years old on the date on which her application was filed. R. 22. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 12.

At step two, the ALJ found that Plaintiff's osteoarthritis of the right knee, obesity, depressive disorder, and anxiety disorder were severe impairments. R. 12–13.   The ALJ also found that hypertension, hyperlipidemia, back pain, status post myocardial infarction, and sensorineural hearing loss (bilateral) were  not severe.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 13–15.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 15–22. Plaintiff had no past relevant work. R. 23.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.,* jobs as a cleaner (housekeeping), a marker, and a routing clerk— existed in the national economy and could be performed by Plaintiff with this RFC. R. 23. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from November 12, 2020, the application date, through the date of the decision. R. 23–24.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 17; *Plaintiff's Reply Brief,* ECF No. 22. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing

legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 19.

## IV. SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A. State Agency Reviewing Consultants

#### 1. State agency medical consultants

Consultant Raymond Briski[4] conducted an initial review of Plaintiff's medical record on behalf of the state agency on November 30, 2020. R. 390–91. Consultant Briski found that Plaintiff had communicative limitations, explaining that "[a]udiologic MER in file documents a bilateral moderate speech frequency hearing loss, with speech frequency hearing thresholds that are abnormal, but not at listing level severity, and mildly reduced speech discrimination scores at conversational decibel level word presentations. Claimant can hear spoken words both in noisy and quiet backgrounds." R. 390. Plaintiff had no environmental limitations except that she must avoid concentrated exposure to noise. R. 390–91. Plaintiff "should wear hearing protection in noisy environments." R. 391.

Consultant James Bilenker[5] also initially reviewed Plaintiff's medical record on behalf of the state agency on December 8, 2020. R. 391–95. According to Consultant Bilenke, Plaintiff could occasionally lift and carry 20 pounds and could frequently lift and carry 10 pounds; she could stand and/or walk for about 6 hours and could sit for about 6 hours in an eight-hour workday. R. 391. Plaintiff could never push/pull with her right lower extremity due to osteoarthritis. *Id*. Plaintiff had the following postural limitations: she could occasionally climb

---

[4] The record reflects that Consultant Briski's medical specialty is E.N.T., R. 391, but his credentials do not otherwise appear in the record.

[5] Consultant Bilenker has a specialty in internal medicine, R. 392, 395, but his credentials do not otherwise appear in the record.

ramps/stairs; balance, stoop (*i.e.*, bend at the waist), and crouch (*i.e.*, bend at the knees), but could never climb ladders, ropes, or scaffolds; kneel; or crawl. *Id*. Plaintiff had no limitation in connection with noise and vibration, but should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation; she should avoid all exposure to hazards (machinery, heights, etc.): "Symptomatology from musculoskeletal and rheumatological conditions can be precipitated and/or exacerbated by extremes of temperature and/or moisture. Intertrigo and complications from same can be precipitated and/or exacerbated by extremes of temperature (heat), wetness and humidity in a morbidly obese individual." R. 392. Under the heading "RFC Additional Explanation[,]" Consultant Bilenker further explained as follows:

> This is a 47 year old female claimant who alleges Depression; Anxiety; Chronic Back Pain; Osteoarthritis in Knees; Hypertension. The mental health issues can be addressed by a PC.

> Although not included in this formal list of allegations, additional alleged conditions are severe morbid obesity (height 70", weight 401 lbs. and BMI 57.54) and hearing loss. The latter should be assessed by a Special Senses Medical Consultant (ENT).

> There is no substantial MER to suggest that there are any significant persisting symptoms, end organ damage, or sequelae related to hypertension. Of note, the claimant was a Denial per ALJ decision dated 06/02/2020 (q.v.) at which time it was formally noted that, "… The claimant has the following severe impairments: depression, anxiety, arthritis, hypertension, and obesity under medical guidelines (20 CFR 404.1520(c) and 416.920(c))… "The additional MER submitted subsequent to the ALJ denial does not give much more significant evidence other than that she continues to have pain in right knee due to OA and was reportedly under consideration for gastric sleeve surgery for her obesity (but I don't see any record of her having had the surgery).

> Her main issue continues to be difficulty sustaining physical activity (standing, walking, ascending stairs) due to her OA which is clearly aggravated by her obesity. RFC reflects all of the preceding history and findings.

> These findings complete the medical portion of the disability determination.

9

*Id.*

Consultant Cirilo Encarnacion[6] reviewed Plaintiff's medical record upon reconsideration for the state agency on February 16, 2021. R. 401–02, 406. Consultant Encarnacion agreed with Consultant Briski that the audiologic record reflected bilateral moderate speech frequency hearing loss and mildly reduced speech discrimination scores, but that Plaintiff "can hear spoken words both in noisy and quiet backgrounds." R. 401.

Consultant Mohammad Rizwan[7] also reviewed Plaintiff's medical record upon reconsideration for the state agency on February 16, 2021. R. 402–03. Consultant Rizwan agreed with the exertional limitations opined by Consultant Bilenker, including the opinion that Plaintiff could never push/pull with her right lower extremity. R. 402. He further opined that Plaintiff had the following postural limitations: she could occasionally climb ramps/stairs, balance, stoop (*i.e.*, bend at the waist), and crouch (*i.e.*, bed at the knees), but she could  never climb ladders/ropes/scaffolds, kneel, or crawl. *Id.* Plaintiff also should avoid concentrated exposure to extreme cold, extreme hot, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation, and should avoid all exposure to hazards (machinery, heights, etc.); however, she had no limitation regarding noise and vibration. R. 402–03 (explaining that "[s]ymptomatology from musculoskeletal and rheumatological conditions can be precipitated and/or exacerbated by extremes of temperature and/or moisture. Intertrigo and complications from same can be precipitated and/or exacerbated by extremes of temperature (heat), wetness and humidity in a morbidly obese individual"). Consultant Rizwan also agreed with Consultant Bilenker's

---

[6] The record reflects that Consultant Encarnacion has a specialty in internal medicine, R. 402, but his credentials do not otherwise appear in the record.

[7] Consultant Rizwan has a specialty in internal medicine, R. 403, but his credentials do not otherwise appear in the record.

reasoning under "RFC Additional Explanation". R. 403.

### 2.   State agency psychological consultants

Consultant Pamela Foley[8] conducted an initial review of Plaintiff's medical record on behalf of the state agency on December 3, 2020. R. 389, 393–94. Consultant Foley found that Plaintiff had moderate limitations in her abilities to interact with others and to adapt or manage herself, but only mild limitations in her abilities to understand, remember, or apply information and concentrate, persist, or maintain pace. R. 389. Plaintiff was moderately limited in her abilities to work in coordination with or in proximity to others without being distracted by them; interact appropriately with the general public; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. R. 393–94 (referring to "see below" for explanation in narrative form). Consultant Foley also expressly opined, *inter alia*, that Plaintiff was not significantly limited in her ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 393.

 Under the heading, MRFC Additional Explanation[,]" Consultant Foley went on to explain her opinions as follows:

> The claimant is a 47 year old woman who is alleging disability due to depression, anxiety, and physical impairments. She has multiple prior denials, most recently by ALJ on 5/28/2020 with a moderate MRFC. Claimant is in tx and medicated, with progress notes indicating that she recently re-started treatment in July, 2020 after a lapse since 2/2020 and running out of medication. There is no hx of psych hospitalization. FO noted no difficulty during a teleclaim. Most recent MSE indicates that the claimant was ox3, mood mildly dysthymic, non-labile, somewhat

---

[8] The record reflects that Consultant Foley's medical specialty is psychology, R. 389, 394, but her credentials do not otherwise appear in the record.

worse in the prior two days related to her sister's DYFS involvement, speech normal, no evidence of psychosis or thought disorder. Cognitive functioning was noted as normal, I/J fair. Source notes indicate that clmt's mental condition is well controlled on medication. ADL report indicates that the claimant sometimes forgets her medications, can prepare simple meals with physical limitations, can do laundry, does not go out alone due to social anxiety, can shop, use a computer, manage money, no problem paying attention, gets along with authority, tries to manage stress, OK with changes.

*The claimant is able to understand and follow simple instructions, to sustain mental pace, persistence, concentration and attention for at least 2-hour segments during a normal workday, and to relate and adapt in work-like settings.*

R. 394 (emphasis added).

Consultant Helen Feldman[9] reviewed Plaintiff's medical record upon reconsideration for the state agency on February 17, 2021. R. 399–400, 403–05. Consultant Feldman agreed with Consultant Foley that Plaintiff was moderately limited in her abilities to interact with others and to adapt or manage herself, but only mildly limited in her abilities to understand, remember, or apply information and concentrate, persist, or maintain pace. R. 400. Consultant Feldman also agreed with Consultant Foley that Plaintiff was moderately limited in her abilities to work in coordination with or in proximity to others without being distracted by them; interact appropriately with the general public; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. R. 403–04. Consultant Feldman further agreed with Consultant Foley that Plaintiff was not significantly limited in her ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 404.

---

[9] Consultant Feldman's specialty is psychology, R. 400, 405, but her credentials are not otherwise reflected in the record.

Under the heading, MRFC Additional Explanation[,]" Consultant Feldman affirmed Consultant Foley's explanation, noting that Plaintiff "did not allege a worsening of psychological issues. R. 404–05.

**B.      Kevin Wells, D.O.**

On May 13, 2022, Kevin Wells, D.O., Plaintiff's treating physician, completed a six-page, check-the-box, and fill-in-the-blank mental medical source statement. R. 747–52. Dr. Wells first treated Plaintiff on July 14, 2020, and continued with medication management visits once every two to three months. R. 747. Dr. Wells diagnosed major depression, generalized anxiety, hypertension, obesity, and history of medical impairment, explaining that Plaintiff was "[p]reviously stable but worsened since the death of 2 cousins. Receiving medication managemetn [sic] and individual therapy." *Id*. (noting that Plaintiff was prescribed Wellbutrin, Celexa, and Trazodone and  denied side effects). The clinical findings that demonstrated the severity of Plaintiff's impairment and symptoms were identified as "[c]hronic low energy a[nd] poor motivation. Lower mood in the context of the deaths of two cousins recently." *Id*. His prognosis for Plaintiff was "[v]ariable. Disorders listed above are chronic in nature but recently exacerbated by stressors including the deaths of family members." *Id*. Dr. Wells identified the following signs and symptoms: anhedonia or pervasive loss of interest in almost all activities; decreased energy; generalized persistent anxiety; mood disturbance; and emotional withdrawal or isolation. R. 748. Dr. Wells addressed Plaintiff's ability to perform work-related activities on a day-to-day basis in a regular work setting, using the following scale:

- *Limited but satisfactory* means your patient has noticeable difficulty (e.g., distracted from job activity) no more than 10 percent of the workday or work week.

- *Seriously limited* means your patient has actionable difficulty (e.g., distracted from job activity) from 11 to 20 percent of the workday or work

13

week.

- *Unable to meet competitive standards* means your patient has noticeable difficulty (e.g., distracted from job activity) from 21 to 40 percent of the workday or work week.

- *No useful ability to function*, an extreme limitation means your patient cannot perform this activity on a regular, reliable and sustained schedule in a regular work setting.

R. 749 (further identifying "Unlimited or Very Good" ability or aptitude). According to Dr. Wells, Plaintiff had a limited but satisfactory ability to perform unskilled work in the following areas: maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; complete a normal workday and workweek without interruptions from psychologically based symptoms; respond appropriately to changes in a routine work setting; and deal with normal work stress. R. 749. Dr. Wells also opined that Plaintiff's abilities in the following areas were unlimited or very good: remember work-like procedures; understand, remember, and carry out very short and simple instructions; maintain attention for two hour segment; work in coordination or proximity to others without being unduly distracted; make simple work-related decisions; ask simple questions or request assistance; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and be aware of normal hazards and take appropriate precautions. *Id*. Dr. Well was unable to assess Plaintiff's abilities to perform at a consistent pace without an unreasonable number and length of rest periods and accept instructions and respond appropriately to criticism from supervisors. *Id*. Asked to identify any limitations that were "Seriously limited[,]" "Unable to meet competitive standards[,]" or "No useful ability to function" and to include findings that support those limitations, Dr. Wells responded, "n/a" and "no limitations", explaining that "[l]*imitations noted above are secondary to anxiety and low*

14

*mood/energy.*" *Id.* (emphasis added). Dr. Wells further opined that Plaintiff had limited but satisfactory abilities to perform semiskilled and skilled work: she could understand and remember detailed instructions and carry out detailed instructions, but she was seriously limited in her ability to deal with the stress of semiskilled and skilled work. R. 750 (explaining further that he was unable to assess Plaintiff's ability to set realistic goals or make plans independently of others). In explaining the findings that supported the serious limitation, Dr. Wells stated "*anxiety and low mood limit her stress tolerance.*" *Id.* (emphasis added). In assessing the abilities needed to perform particular types of jobs, Dr. Wells opined that Plaintiff had a limited but satisfactory ability to use public transportation, but had an unlimited or very good ability to interact appropriately with the general public and to maintain socially appropriate behavior. *Id.* He was unable to assess her abilities to adhere to basic standards of neatness and cleanliness and to travel in unfamiliar placse. *Id.* Dr. Wells denied that Plaintiff had a low I.Q. or reduced functional abilities. *Id.* Asked if Plaintiff's psychiatric condition exacerbated her experience of pain or any other physical symptom, Dr. Wells responded: "n/a" and stated that Plaintiff "has not described pain or other physical symptoms but her anxiety/mood has the potential to exacerbate these if they were described by her." *Id.* Dr. Wells was unable to assess the work demands that Plaintiff found stressful if stress tolerance were determined to be an issue. R. 751. He opined that Plaintiff's impairments or treatment would cause her to be absent from work, on average, more than four day per month. *Id.* Plaintiff's impairments had lasted or would be expected to last at least twelve months and affirmed that her impairments were reasonably consistent with the symptoms and functional limitations in this evaluation. *Id.* According to Dr. Wells, Plaintiff would likely be off task 20% of a typical workday. R. 752.

## V.    DISCUSSION

Plaintiff argues that the ALJ failed to properly consider the opinions of the reviewing state agency consultants and Dr. Wells, resulting in a flawed RFC determination. *Plaintiff's Brief*, ECF No. 17, pp. 9–31; *Plaintiff's Reply Brief*, ECF No. 22, pp. 1–7. For the reasons that follow, this Court disagrees.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 416.945(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. § 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record", but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except is able to occasionally climb stairs/ramps; never climb ropes, ladders or scaffolds; never crawl; and occasionally kneel, stoop, crouch and balance. The

16

> claimant can never be exposed to unprotected heights or hazardous machinery. The claimant is able to occasionally reach overhead; and frequently reach in all other directions. The claimant is able to frequently finger and handle. The claimant is able to occasionally push and pull with right lower extremity. The claimant is able to have occasional contact with supervisors, co-workers and the public; and is able to do only simple and routine tasks.

R. 15. In making this determination, the ALJ detailed years of record evidence regarding Plaintiff's physical impairments, including, *inter alia*, evidence that reflects her morbid obesity; that her scheduled gastric sleeve surgery had been rescheduled due to the pandemic; that she had undergone a cortisone injection in December 2019 for right knee pain, which provided relief for approximately 14 months and that another injection, in May 2021, provided immediate relief, although she complained of knee pain during examinations in August 2021 and May 2022. R. 16–17. In reaching this finding, the ALJ also found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the record evidence. R. 21. The ALJ went on to explain his findings regarding the limitations flowing from Plaintiff's physical impairments, as follows:

> Overall, the claimant has had severe and not severe physical impairments. She has received medications and injections in her right knee. The claimant has not had hospitalizations or end organ damage secondary to any of her impairments. The one time she was seen in a hospital due to elevated blood pressure, the claimant reported she had not taken her medication that morning. Her right knee osteoarthritis and obesity has limited the claimant to light exertional work activity, with postural, environmental and manipulative restrictions. The claimant is able to occasionally push and pull with right lower extremity.

R. 21.

In crafting the RFC, the ALJ also considered years of evidence relating to Plaintiff's mental impairments, including, *inter alia*, evidence that Plaintiff had reported during a July 2020 assessment that, despite social anxiety and depression, therapy and medication had been helpful in her ability to complete chores, moving around the house, and getting along with

others; Plaintiff's report that breathing exercises and spending time with her granddaughter had helped her; her report that she needed assistance with finances, but enjoyed spending time with her granddaughter, completing puzzles, and reading and was independent in personal care, household maintenance and transportation; findings on mental examination that Plaintiff was alert and fully oriented, was cooperative with unremarkable speech and mood, had a full and unremarkable affect; intact concentration, attention, and memory; good fund of knowledge, insight, and judgment; therapy progress notes from July 2020 reflecting that Plaintiff had reported symptoms of depression and anxiety, for which she called her friend and spent time with her granddaughter; Plaintiff's report that she went to movies, went out to eat, listened to music, and spent time outside; Plaintiff's expressed desire to find a part time job, although she was concerned that her symptoms would impede her ability to do so; her July 2020 report of reduced anxiety and depression, which she attributed to her medications; her report that she babysit her five-month old granddaughter and that her mood was stable and friendly; findings on a November 2020 clinical examination that Plaintiff was fully oriented and engaged in a therapy session and was making significant progress in meeting her goals, although her tolerance for social situations had decreased during the pandemic, that she spoke at normal pace and volume, and was able to recall events from earlier that year and earlier that week; that she concentrated on answering assessment questions, shared her progress, and was receptive to therapeutic interventions; evidence that, during a December 2020 pharmacological management appointment with Dr. Wells, Plaintiff reported that she was doing well and that she had had no anxiety issues or panic attacks, and had been sleeping well with medication; her denial of any recent periods of depressed mood, self-harm, or harm to others; her report that she was able to cook, clean, and do other household activities; mental status examination findings of normal speech, appropriate

18

mood and affect, and linear, logical, reality based, goal-oriented and organized thought processes; her denial of suicidal ideation, hallucinations, paranoia, or difficulty with concentration; absence of loose associations and she was able to follow conversation; intact memory and fair insight and judgment; Plaintiff's report that her symptoms were well managed and that she wanted to maintain her current regimen; January 2021 mental status examination findings that Plaintiff was fully oriented to date, time, and had a normal mood, that she used humor and was very receptive to therapy, and that she reported spending time with family and children; Plaintiff's good prognosis; a March 2021 case management note reflecting that Plaintiff had received assistance in job hunting and skills building; Dr. Wells's medication management notes between February and September 2021 which reflected normal mental status examinations and no recurrence of depressed mood, although diagnoses remained major depressive disorder, established, chronic, unchanged, and generalized anxiety disorder, established and stable; December 2021 therapy notes which reflected Plaintiff's report of good mood, her babysitting her granddaughter every day since October, and her looking for a part-time job and for opportunities for social interactions; findings on mental examination of normal speech with stable mood and functioning; Plaintiff's January 2022 report to Dr. Wells that, although she felt okay had slept well, her mood was low because her cousin had committed suicide with her baby; the finding that Plaintiff's mental examination was normal other than a mildly dysthymic mood; February 2022therapy notes that reflected Plaintiff's report that she continued to deal with grief, but that her depressed mood and sleep had improved; finding upon mental examination that Plaintiff was oriented times three with a  calm mood and congruent affect, was cooperative and agreed to individual therapy once a month, weekly group therapy, and medication management; Plaintiff's May 2022 report to Dr. Wells that she felt much better since starting Wellbutrin and

19

findings that her mood was euthymic and that the rest of her status examination was normal; and

Dr. Wells' diagnoses at that time of major depressive disorder, established, chronic, improved;

and generalized anxiety disorder, established, stable. R. 17–21.

> The ALJ considered Plaintiff's mental impairments and related limitations, as follows:

> In regard to the claimant's major depressive disorder; and anxiety disorder, she stabilized after taking medication for only a few months. She continued to improve and deny any reoccurrence of depressive symptoms until January 2022. In fact, she was babysitting for her granddaughter every day. In January 2022, her cousin had committed suicide with her baby. This worsened her depression. Nonetheless, after some medication was added, in May 2022, the claimant reported improved mood. She continued to have normal mental status examinations, except for some mood changes when becoming stressed about her rent. Her mental impairments have limited the claimant to performing simple and routine tasks; and involving only occasional contact with supervisors, co-workers and the public.

R. 21. In the view of this Court, this record contains substantial evidence to support the ALJ's

RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *cf. Dearth v.*

*Barnhart*, 34 F. App'x 874, 875 (3d Cir. 2002) ("If a symptom can be reasonably controlled by

medication or treatment, it is not disabling") (citing *Gross v. Heckler*, 785 F.2d 1163, 1165-66

(4th Cir. 1986)); *Brian W. v. Bisignano*, No. 25-CV-2471, 2025 WL 3157872, at *8 (E.D. Pa.

Nov. 12, 2025) ("The above record evidence supports the ALJ's determinations regarding the

RFC generally and Salmon's opinion specifically, inasmuch as they indicate Plaintiff's mental

function limitations were at most moderate and could be well-managed via treatment.").

In making the RFC determination, the ALJ also specifically considered the opinions of

the state agency reviewing consultants and of Dr. Wells, R. 20, 22, which Plaintiff now

challenges. The Court is not persuaded by those challenges.

An ALJ's decision must include "a clear and satisfactory explication of the basis on

which it rests," sufficient to enable a reviewing court "to perform its statutory function of judicial

review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that

supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[10] the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 416.927 *with* 20 C.F.R. § 416.927c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c).

---

[10] As previously noted, Plaintiff's application was filed on November 12, 2020.

21

The applicable regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 416.920c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 416.920c(c)(1).  As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 416.920c(c)(2).

The applicable regulation further requires the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and to articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 416.920c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors."). Finally, an ALJ "need

22

not reiterate the magic words 'support' and 'consistent' for each doctor" in order to satisfy the articulation requirements for the supportability and consistency factors, providing that the ALJ "weave[s] supportability and consistency throughout h[is] analysis of which doctors were persuasive." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024).

The Court addresses in turn Plaintiff's challenges to the ALJ's consideration of the opinion evidence.

### 1.      State agency reviewing consultants

In crafting the RFC determination, the ALJ found the opinions of the state agency reviewing consultants "partially persuasive[,]" explaining as follows:

> DDS consultants opined that the claimant had the ability to perform light exertional work activity, with postural, communicative, and environmental limitations. It was further opined that the claimant had no restrictions in regard to understanding and memory. It was further opined that the claimant had moderate restrictions in regard to sustained concentration and persistence; social interaction; and adaption. (Exhibits C3A and C5A)[11] I find these opinions partially persuasive because they are partially supported by and consistent with the medical evidence of record. Their persuasiveness is reduced because while these opinions were rendered by doctors with program knowledge, the consultants did not have the opportunity to examine the claimant or review the evidence received after their file review was complete. Specifically, the opinion on never pushing or pulling with the right lower extremity is not persuasive, as the evidence does not support such an extreme limitation (Exhibit C3F p.18, Exhibit C6F p.16, Exhibit C8F p.3, Exhibit C11F p.1).

R. 22.

Plaintiff first complains that the ALJ erred by combining multiple medical and psychological opinions from different reviewing state agency consultants into a single analysis. *Plaintiff's Brief*, ECF No. 17, pp. 9–12; *Plaintiff's Reply Brief*, ECF No. 22, pp. 2–6. Plaintiff contends that, although the applicable regulation allows the combining of multiple opinions from

---

[11] As detailed above, the ALJ was mistaken that the state agency psychological consultants opined that Plaintiff moderately limited in her ability to sustain concentration and persistence; they actually opined that she was only mildly limited in that area. R. 389, 400.

the same medical source into a single analysis, the regulations does not permit the combining of multiple opinions from different medical sources into a single analysis. *Plaintiff's Reply Brief*, ECF No. 22, p. 2. According to Plaintiff, by considering the multiple opinions from different reviewing state agency consultants, the ALJ failed to provide a clear and satisfactory explanation of the basis for his decision: although the ALJ found the opinions to be "partially persuasive[,]"it is not clear what portion of each opinion was persuasive and what portion was rejected because the ALJ did not elaborate on each opinion nor did he explain how the medical evidence was consistent with, or supported, each opinion. *Id*. at 3–5; *Plaintiff's Brief*, ECF No. 17, pp. 9–12. Plaintiff therefore takes the position that, because the ALJ's analysis did not differentiate between the physical and psychological opinions, the ALJ's path of reasoning cannot be followed or evaluated. *Id*.

The Court is not persuaded that this issue requires remand. "Ordinary harmless error review, in which the appellant bears the burden to demonstrate harm, is applicable to administrative appeals." *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S.Ct. 1696, 173 L.Ed.2d 532 (2009)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm." *Shinseki*, 556 U.S. at 409–10. In the present case, even assuming that the ALJ erred in combining multiple state agency consultants' opinions into a single analysis, Plaintiff has not explained how this error harmed her. *Plaintiff's Brief*, ECF No. 17, pp. 9–12; *Plaintiff's Reply Brief*, ECF No. 22, pp. 2–3.

Moreover, despite attacking the ALJ's consideration of the state agency opinions regarding Plaintiff's various mental and physical limitations, Plaintiff has not shown how a

24

"proper" consideration of this evidence would lead to a different result. *Plaintiff's Brief*, ECF No. 17, pp. 13–22; *Plaintiff's Reply Brief*, ECF No. 22, pp. 4–6. For example, as to the opined physical limitations noted above, the ALJ specifically found that the evidence did not support the state agency medical consultants' extreme limitation that Plaintiff could never push/pull with her right lower extremity. R. 22 (citing (Exhibit C3F p.18 [R. 700], Exhibit C6F p.16 [768], Exhibit C8F p.3 [R. 896], Exhibit C11F p.1 [R. 928]). The ALJ's cited evidence reflects visits to Plaintiff's primary care physician in December 2019 and May 2022, and urgent care visits in March 2021 and December 2021, all of which revealed normal musculoskeletal examinations, and support the ALJ's discounting this extreme physical limitation. *Id*.

In addition, before discounting the state agency opinion of never pushing/pulling with right lower extremity, the ALJ noted that Plaintiff had experienced 14 months of pain relief following a December 2019 cortisone injection in her right knee and immediate relief following repeat injections in May 2021. R. 16 (citing Exhibit C6F/31–36, R. 783–88). A May 2021 examination revealed no effusion or tenderness and only mild swelling. *Id*. (same). In August 2021, Plaintiff reported 6/10 knee pain, but other than abnormally thick toenails, the rest of the examination was normal. R. 17 (citing Exhibit C6F/21–30, R. 773–82). In May 2022, Plaintiff reported 8/10 knee pain, but the rest of the examination was normal. R. 17 (citing Exhibit C6F/6–11, R. 764–72, including R. 768, revealing normal range of motion and no edema in right lower leg). Plaintiff reported swelling of the leg and feet in July 2022, and she was diagnosed with essential hypertension and edema of both legs for which a diuretic was prescribed. *Id*. (citing Exhibit C6F/6–11, R. 758–63). Moreover, the ALJ found that Plaintiff's impairments did not cause the degree of limitation alleged by her. R. 21; *see also* R. 19 (noting that Plaintiff reported in December 2020 that she could cook, clean, and do other household activities, and that

she reported on December 2, 2021 that she had been babysitting her granddaughter every day since October), 21 (noting that Plaintiff was babysitting for her granddaughter every day).

In short, the ALJ's decision reflects that, contrary to Plaintiff's assertion, the cited evidence supports the ALJ's conclusion that the state agency opinions that Plaintiff could never push/pull with her right leg were extreme and not supported by the record evidence. R. 16–17, 22, 700, 768, 758–88, 896, 928; *see also Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024) ("[A] judge need not reiterate the magic words 'support' and 'consistent' for each doctor" in order to satisfy the articulation requirements for the supportability and consistency factors, providing that the judge "weave[s] supportability and consistency throughout her analysis of which doctors were persuasive."); *Crossley v. Kijakazi*, No. 3:20-CV-02298, 2021 WL 6197783, at *11 (M.D. Pa. Dec. 31, 2021) (finding that the ALJ properly evaluated opinions regarding exertional limitations where the ALJ considered, *inter alia*, physical examinations that routinely noted the claimant to have normal range of motion, no tenderness, normal strength, no tremor, no cranial nerve deficit, and normal gait and coordination); *Aponte v. Kijakazi*, No. CV 20-5008, 2021 WL 4963545, at *7 (E.D. Pa. Oct. 25, 2021) (finding that substantial evidence supported the ALJ's finding that a treating opinion was not persuasive under 20 C.F.R. § 404.1520c because it was inconsistent with, *inter alia*, mild findings on "multiple physical examinations" and mild radiographic findings); *Serrano v. Kijakazi*, No. CV 20-3985, 2021 WL 4477137, at *3–4 (E.D. Pa. Sept. 30, 2021) ("In this case, the ALJ discussed and analyzed the evidence extensively before determining the persuasiveness of the medical opinions. . . . The ALJ was not required to repeat this information for the sake of elaborating on her findings of persuasiveness.").

26

Plaintiff nevertheless argues that the ALJ's cited exhibits support the state agency opinions in this regard, *Plaintiff's Brief*, ECF No. 17, p. 17, but her argument boils down to nothing more than a disagreement with the ALJ's decision, which the Court has already explained is supported by substantial evidence. *See Perkins v. Barnhart*, 79 F. App'x 512, 514–15 (3d Cir. 2003) ("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence."). To the extent that Plaintiff invites the Court to reweigh the evidence, the Court declines to do so. *See Chandler*, 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *cf. Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . .  [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

Plaintiff also argues that the ALJ failed to properly consider other physical limitations opined by the state agency consultants. *Plaintiff's Brief*, ECF No. 17, pp. 17–18, 29–30. Plaintiff specifically contends that the ALJ did not explain why he did not accommodate the state agency limitation of no kneeling, but instead limited instead to only occasional kneeling in the RFC. *Id*.; *see also* R. 15. However, for the reasons detailed above in connection with the state agency limitation of no pushing/pulling with the right lower extremity, the Court finds that the ALJ adequately explained why he did not adopt this extreme limitation. In any event, even if the ALJ erred in this regard, Plaintiff has not explained how the ALJ's failure to incorporate in the RFC this limitation has harmed her. *See Plaintiff's Brief*, ECF No. 17, pp. 17–18, 29–30. Notably, two of the three occupations identified by the vocational expert (and relied upon by the ALJ at step five)—*i.e.*, jobs as marker and routing clerk—do not require kneeling and the third occupation—

27

*i.e.*, cleaner, housekeeping—requires kneeling only occasionally, which the ALJ's RFC would accommodate. R. 23, 51; Cleaner, Housekeeping, DICOT 323.687-014, 1991 WL 672783; Marker, DICOT 209.587-034, 1991 WL 671802; Routing Clerk, DICOT 222.687-022, 1991 WL 672133. Plaintiff has simply not established that the ALJ's failure to discuss these environmental limitations is anything other than harmless error. *See Shinseki*, 556 U.S. at 409–10; *see also Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (finding that "a remand is not required here because it would not affect the outcome of the case").

Plaintiff also complains that the ALJ did not sufficiently accommodate the state agency medical consultants' opinion that Plaintiff could, *inter alia*, occasionally stoop (but only when bending at the waist), and crouch (but only when bending at the knees). *Plaintiff's Brief*, ECF No. 17, pp. 17–18 (citing R. 391, 402), 29–30 (citing R. 15, 391, 403). According to Plaintiff, the RFC for occasional stooping and crouching, R. 15, omits without explanation the state agency medical consultants' greater limitation of stooping only when bending at the waist and crouching only when bending at the knees. *Plaintiff's Brief*, ECF No. 17, pp. 17–18, 29–30. Plaintiff's argument is not well taken. As the Commissioner points out, *Defendant's Brief*, ECF No. 19, p. 12, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCODICOT") sets out the physical demand components of activities addressed in the Dictionary of Occupational Titles ("DICOT"). SCODOT App'x C, Physical Demands. SCODOT defines "stooping" as "[b]ending body downward and forward *by bending spine at the waist*, requiring full use of the lower extremities and back muscles" and defines "crouching" as "[b]ending body downward and forward by *bending legs* and spine." SCODICOT App'x C-4 (emphasis added), C-6 (emphasis added). Accordingly, there was no need for the ALJ to explain or explicitly include the state agency limitations describing Plaintiff's ability to stoop

and crouch because those modifiers are already included in the definitions of those activities. *See id*.

Plaintiff goes on to complain that the ALJ did not discuss the opinions of the state agency medical consultants regarding environmental limitations, including avoiding concentrated exposure to extreme cold, extreme hot, wetness, humidity, fumes, odors, dusts, gases, poor ventilation, etc., and avoiding all exposure to hazards (machinery, heights, etc.). *Plaintiff's Brief*, ECF No. 17, pp. 30–32 (citing R. 392, 399, 401, 402–03). Plaintiff contends that the ALJ's failure to discuss—or to even mention—these environmental limitations requires remand. *Id*. This Court disagrees. Even assuming that the ALJ erred in failing to expressly address these opined environmental factors, Plaintiff has again not explained how any such error harmed her. *Id*. Moreover, none of the three occupations identified by the vocational expert (and relied upon by the ALJ at step five of the sequential evaluation), R. 23, 51, requires any exposure to weather, extreme heat or cold, humidity, wetness, toxic chemicals, or hazards (*i.e.*, moving mechanical parts, electric shock, high exposed places, radiation, explosives). Accordingly, this error, which is at most harmless, does not require remand. *See Shinseki*, 556 U.S. at 409–10; *Rutherford*, 399 F.3d at 553.

Plaintiff's challenge to the ALJ's consideration of the state agency psychological consultants' opinions is similarly unavailing. Plaintiff complains that the ALJ failed to discuss the supportability or consistency of these opinions with no clear reasoning of what portions of the opinions the ALJ  accepted or rejected, thus preventing this reviewing court from tracing the path of the ALJ's reasoning. *Plaintiff's Brief*, ECF No. 17, p. 15; *Plaintiff's Reply Brief*, ECF No. 22, p. 4. Plaintiff further contends that, even if the ALJ properly considered these opinions, "it is inherent in the decision that the ALJ implicitly accepted the opinions of the State agency

29

psychologists" where "the ALJ explicitly rejected some physical limitations, while precluding any rejection of the mental limitations in the analysis." *Plaintiff's Brief*, ECF No. 17, p. 20 (citing R. 22). Plaintiff specifically complains that the ALJ failed to accommodate in the RFC the moderate limitation in Plaintiff's ability to concentrate, persist, or maintain pace, which the state agency psychologists—and the ALJ—unanimously found and which is supported by substantial evidence. *Id*. at 20–21 (citations omitted), 26–27 (citing, *inter alia*, *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 211 (3d Cir. 2019); *Ramirez v. Barnhart*, 372 F.3d 546, 554–55 (3rd Cir. 2004)). Plaintiff also argues that the ALJ failed to account for her "moderate limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances nor her lack of ability to complete a normal workday and workweek, without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods[,]" which, again, the ALJ implicitly found persuasive. *Id*. at 27–28. Nor did he explain the omission of these mental limitations. *Id*. According to Plaintiff, "[b]ecause the mental limitations were not included in the RFC, under this scenario, the ALJ has erred and the matter must be remanded." *Id*. at 20.

Plaintiff's arguments are not well taken. As an initial matter, Plaintiff is mistaken that the state agency reviewing psychological consultants found that Plaintiff was moderately limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Rather, they found that Plaintiff was not significantly limited in those areas. R. 393, 404. As previously explained, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir.

30

2005). Plaintiff has not shown that the ALJ erred in failing to include these limitations in the RFC. *See id.*

Moreover, the state agency psychological consultants expressly concluded, in their narrative discussions under the heading, "MRFC – Additional Explanation," that Plaintiff "is able to understand and follow simple instructions, to sustain mental pace, persistence, concentration and attention for at least 2-hour segments during a normal workday, and to relate and adapt in work-like settings." R. 394, 403 (agreeing and affirming this finding upon reconsideration); *see also* R. 393 ("[T]he actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion."), 403 (same); *cf. Wise v. Comm'r of Soc. Sec.*, 626 F. App'x 357, 360 (3d Cir. 2015) ("But we have said that ALJs are not required to give any weight to these fill-in-the-blank and checklist portions of RFC assessments and that their focus instead should be on the narrative portions of the assessments where the medical experts expound on their opinions.") (citations omitted). In the case presently before this Court, the ALJ's RFC specifically provides that Plaintiff is able to, *inter alia*, "do only simple and routine tasks." R. 15. In crafting this mental RFC, the ALJ expressly relied on, among other things, Plaintiff's generally unremarkable mental status examinations except for some specific triggers such as stress about rent and the death of her cousins; the stabilization and improvement of her conditions with medication; and her demonstrated ability to babysit her granddaughter every day. R. 17–21. On this record, the Court cannot conclude that the ALJ erred in considering the state agency psychological consultants' opinions or in crafting the mental RFC. *See Hess*, 931 F.3d at 211 (stating that "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace'" and explaining that

31

this conclusion "flows directly from our decision in *Ramirez* [*v. Barnhart*, 372 F.3d 546, 554 (3rd Cir. 2004)]"); *Long v. Kijakazi*, No. 20-CV-6336, 2022 WL 1204131, at *14 (E.D. Pa. Apr. 22, 2022) (concluding that the ALJ provided a valid explanation for finding that the claimant is capable of performing simple tasks where the ALJ "repeatedly pointed out Plaintiff's 'normal' mental status examinations[,]" "emphasized Plaintiff's ADLs, which included such tasks as childcare for three children (including a one-year-old), house cleaning, woodworking, laundry and shopping[,]" and the claimant's "progress notes consistently showed full orientation, alertness, logical thought processes, fair or normal insight and judgment, and intact reality testing, decision making, attention, concentration, and memory"); *cf. Menkes v. Astrue*, 262 F. App'x 410, 412–13 (3d Cir. 2008) ("The term 'simple routine tasks,' in the context of the disability proceedings, generally refers to the non-exertional or mental aspects of work. For example, performing a 'simple routine task' typically involves low stress level work that does not require maintaining sustained concentration.").

For all these reasons, substantial evidence supports the ALJ's consideration of the opinions of the state agency reviewing consultants.

### 2.    Kevin Wells, D.O.

In crafting the RFC, the ALJ also expressly considered the opinions of Dr. Wells:

> On May 13, 2022, Kevin Wells, D.O. completed a medical source statement. It was noted that the claimant's had been seen for medical management visits since July 14, 2020, every two to three months. It was noted that the claimant had diagnosis of major depression and generalized anxiety. It was related that the claimant had previously been stable, but her condition worsened since the death of two cousins. She was receiving medication management and individual therapy. It was reported that her medications included a Wellbutrin XL, Celexa and Trazodone. The claimant denied current side effects. Prognosis was variable. It was explained that the disorders listed above were chronic in nature, the recently exasperated by stressors, including the deaths of family members. Signs and symptoms included anhedonia; decreased energy; generalized persistent anxiety; mood disturbance; and emotional withdrawal/isolation. It was opined that the claimant had an

unlimited/very good ability to remember work like procedures; understand, remember, and carry out very short and simple instructions; maintain attention for two hour segments; work in coordination with or proximity to others without being unduly distracted; make simple work related decisions; ask simple questions or request assistance; get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; and be aware of normal hazards and take appropriate precautions. It was further opined that the claimant had limited but satisfactory ability to maintain regular attendance and be punctual within customary, usual strict tolerances; sustain an ordinary routine without special supervision; complete a normal workday and workweek without interruptions from psychologically based symptoms; respond appropriately to changes in a routine work setting; and deal with normal work stress. *It was explained that these limitations were secondary to anxiety and low mood/energy.* It was opined that the claimant had limited but satisfactory ability to understand, remember, and carry out detailed instructions. It was further opined that the claimant was seriously limited in regard to the ability to deal with stress of semiskilled and skilled work. It was explained that these limitations were due to anxiety and low mood, which limited her stress tolerance. It was opined that the claimant had unlimited or very good ability to interact appropriately with the general public; and maintain socially appropriate behavior. It was further opined that the claimant had limited but satisfactory ability to use public transportation. It was further opined that as a result of the claimant's impairments/treatments, on average, the claimant would be absent more than four days per month. It was further opined that the claimant's symptoms were likely to be severe enough to interfere with attention concentration needed to perform even simple work tasks for 20 percent of the workday. (Exhibit C5F)

R. 20 (emphasis added). However, the ALJ found Dr. Wells's opinion to be "minimally

persuasive[,]" explaining as follows:

The opinions of Dr. Wells in Exhibit C5F are minimally persuasive. Although the evidence supports the opinion that the claimant had satisfactory or better ability in most mental abilities and aptitudes, the evidence does not support Dr. Wells' opinions regarding absences and time being off task. In addition, the opinions are internally inconsistent as Dr. Wells indicated that the claimant would be off task 20 percent of the workday, yet in most mental abilities and aptitudes the claimant was "limited but satisfactory", which is defined as having difficulties no more than ten percent of the workday. Moreover, Dr. Wells appeared to indicate that any mental instability might have been due to the death of two cousins of the claimant. It was not specified how long the effect of the death of the cousins would impact the claimant in a significant way.

R. 22. The Court finds no error with the ALJ's consideration in this regard. *See* 20 C.F.R. §

416.920c(c); *Ward v. Dudek*, No. 1:24-CV-1203, 2025 WL 1085229, at *8 (M.D. Pa. Apr. 10,

33

2025) (finding substantial evidence supported the ALJ's evaluation of opinion evidence where the ALJ found a medical opinion unpersuasive where that opinion was, *inter alia*, internally inconsistent); *cf. Smith v. Astrue*, 359 F. App'x 313, 316–17 (3d Cir. 2009) (finding that the ALJ did not err in discounting treating opinion that, among other things, contained internal inconsistencies).

Plaintiff, however, points out that Dr. Wells "qualifies his opinion" when he explained that "'the limitations noted above are secondary to anxiety and [that] low mood/energy' and 'anxiety and low mood limit [Plaintiff's] stress tolerance.'" *Plaintiff's Brief*, ECF No. 17, p. 25 (quoting R. 749–50). According to Plaintiff, the ALJ discounted Dr. Wells's opinion in conclusory fashion without addressing that physician's "qualifying opinion that the list of satisfactory or better limitations are secondary to Plaintiff's severe anxiety impairment and its symptoms of low mood, energy, and stress tolerance." *Id.* "Without addressing Dr. Wells' qualifying opinion, there is no link between the ALJ's finding that Dr. Wells' minimally persuasive opinions regarding Plaintiff's satisfactory or better ability in most mental abilities and aptitudes and the finding of moderate limitations in adapting or managing oneself." *Id.* at 25–26; *see also id.* at 28–29.

Plaintiff's arguments are not well taken. Contrary to Plaintiff's assertion that the ALJ never addressed Dr. Wells's "qualifying opinion[,]" the ALJ specifically acknowledged that this physician's explanation that Plaintiff's "limited but satisfactory" abilities were "secondary to anxiety and low mood/energy." R. 20. The ALJ implicitly found this explanation insufficient to reconcile the inconsistency between these "limited but satisfactory" abilities and Dr. Wells's extreme opinions that Plaintiff would be off task 20 percent of the workday and absent more than four days per month. R. 22, 751–52. Moreover, fairly reading the opinion as a whole, the ALJ's

consideration of, *inter alia*, the generally unremarkable mental status examination findings, R. 17–21, further support the ALJ's implicit conclusion that Dr. Wells's "qualifying explanation" failed to reconcile the internal inconsistencies in his opinions. *Cf. Serrano*, 2021 WL 4477137, at *3–4. Accordingly, to the extent that Dr. Wells's "qualifying explanation" may be read to support that physician's extreme opinions, the ALJ properly resolved this conflict, and that resolution is supported by the ALJ's discussion and review of the record. *See Hatton*, 131 F. App'x at 880.

Plaintiff goes on to argue that the ALJ's failure to include Dr. Wells's opined limitations was reversible error where, in response to her counsel's questioning, the vocational expert testified that being off task 15% or more during the workday or being absent from work two or more days per month would be work-preclusive. *Plaintiff's Brief*, ECF No. 17, pp. 28–29 (citing R. 52). This Court disagrees. For the reasons already explained, substantial evidence supported the ALJ's decision not to include Dr. Wells's extreme opinions that Plaintiff would be off task 20% of a workday and absent more than four days per month. The fact that Plaintiff's counsel also posed to the vocational expert an alternative hypothetical question that contained more limitations than did the RFC actually found by the ALJ is irrelevant when the RFC ultimately found by the ALJ is supported by substantial evidence. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) ("A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence."); *O'Neill v. Comm'r of Soc. Sec.*, No. CV 18-0698 (RBK/KMW), 2019 WL 413539, at *9 (D.N.J. Jan. 31, 2019) ("[T]he ALJ does not have a duty to respond to Plaintiff's counsel's attempts to expand the hypothetical question.").

35

Finally, in her reply, Plaintiff complains that the ALJ failed to explain why he rejected Dr. Wells's opinion that Plaintiff's ability to deal with the stress of semiskilled and skilled work was seriously limited. *Plaintiff's Reply Brief*, ECF No. 22, pp. 6–7. Even assuming that the ALJ erred in not specifically addressing this opinion, any such error is, again, harmless. As previously noted, the ALJ relied on the testimony of the vocational expert to find that Plaintiff could perform the jobs of cleaner (housekeeping), marker, and routing clerk, all of which were unskilled jobs. R. 23 (reflecting that these three jobs were SVP 2); *see also* SSR 00-4p, 2000 WL 1898704, at *3 ("[U]nskilled work corresponds to an SVP of 1–2[.]"). Thus, the fact that Plaintiff was seriously limited in her ability to perform semiskilled and skilled work has no bearing on her ability to perform those unskilled jobs. The ALJ's failure to expressly discuss Dr. Wells's opined limitation in those other job skill levels is, at most, harmless error.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does his consideration of the opinions of the state agency reviewing consultants and of Dr. Wells.

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  March 19, 2026                        *s/Norah McCann King*
                                             NORAH McCANN KING
                                             UNITED STATES MAGISTRATE JUDGE

36